UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN ANN FEIGHERY, et al.,<br><br>Plaintiff,<br><br>v.<br><br>DITECH FINANCIAL, LLC,<br><br>Defendant. | No. 2:17-cv-01473-KJM-AC |

Defendant's motion to dismiss plaintiff's complaint is before the court. ECF No. 8. Defendant Ditech Financial, LLC ("Ditech") argues plaintiff Susan Ann Feighery's complaint cannot support a claim for relief against Ditech. For the following reasons, the court GRANTS defendant's motion to dismiss and also grants leave to amend.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Susan Ann Feighery ("plaintiff") alleges the following facts, which the court accepts as true on a motion to dismiss. On March 23, 2007, plaintiff obtained a loan from Countrywide Home Loans, Inc. ECF No. 1 ¶ 14. The loan was secured by a second lien on plaintiff's property located at 472 W. 9th St., Stockton, California 95206. *Id*. Plaintiff alleges,

"[i]nstead of being recorded against the property by which it was secured, . . . [the loan] was erroneously recorded against another of Plaintiff's properties . . . ." *Id.* ¶ 15. This error resulted in "clouded title" for both of plaintiff's properties. *Id.*

Plaintiff discovered the error in 2013. *Id.* ¶ 17. The San Joaquin County Recorder's office informed plaintiff the lender or servicer needed to correct the error, preventing plaintiff from correcting the error herself. *Id.* Plaintiff's efforts to resolve the problem with defendant's predecessors, Countrywide Home Loans, Inc. and Green Tree Mortgage, "were fruitless." *Id.* ¶¶ 16-17.

On January 9, 2017, plaintiff called defendant Ditech in an effort to resolve the error. *Id.* ¶ 18. Ditech responded with "words to the effect of '[Defendant] was aware of these issues' and that 'many similar errors had occurred.'" *Id.* (alterations in original). During this call, plaintiff requested Ditech's address for written correspondence about the error. *Id.* ¶ 19. Ditech provided plaintiff with "an address other than that address designated by Defendant for receipt (and the attendant liability) of Qualified Written Requests, Notices of Error, and Requests for Information pursuant to [the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* ("RESPA")]." *Id.*

On or about January 31, 2017, plaintiff sent by certified mail a Qualified Written Request ("QWR") with Notice of Error and Request for Information to Ditech's designated address for receipt of QWRs, Notices of Error and Requests for Information pursuant to RESPA. *Id.* ¶ 20. Plaintiff subsequently received correspondence from defendant informing plaintiff the issue would be resolved by February 24, 2017. *Id.* ¶ 21. Plaintiff had received no further communication from defendant when she sent another QWR by certified mail to defendant on March 6, 2017. *Id.* ¶ 22.

On or about March 20, 2017, plaintiff received a written response from Ditech stating, "'[a]t this time, the request made verbally with our Customer Service Department in January 2017 has been forward [*sic*] to our attorney for further handling' and '[a]n immediate correction of the legal description [of the loan] is not possible.'" *Id.* ¶ 23 (alterations in original).

/////

2

Plaintiff filed her complaint here on July 17, 2017, alleging Ditech violated 12 U.S.C. § 2605(e) of the RESPA. *See id.* ¶¶ 27-30. Plaintiff further alleges negligence, *id.* ¶¶ 31-34, breach of the covenant of good faith and fair dealing, *id.* ¶¶ 35-38, and violation of California Business and Professions Code § 17200, *et seq.*, *id.* ¶¶ 39-43. Plaintiff seeks compensatory damages, interest, exemplary and punitive damages, actual damages, statutory damages, attorney's fees and costs, injunctive relief and restitution. *Id.* at 11-13 (Prayer for Relief).

On August 17, 2017, Ditech filed a motion to dismiss plaintiff's complaint. ECF No. 8. Plaintiff filed her opposition on September 22, 2017, ECF No. 12, and Ditech filed a reply on September 29, 2017, ECF No. 15.

II. <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The motion may be granted only if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quotation marks and citation omitted). Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), in order to survive a motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept its factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "'conclusory allegations of law and unwarranted

inferences' cannot defeat an otherwise proper motion to dismiss." *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 820 (9th Cir. 2002) (quoting *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. California*, 159 F.3d 1178, 1181 (9th Cir. 1998)).

Where dismissal is appropriate, "[t]he court should freely give [leave to amend the pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .").

III. DISCUSSION

A. RESPA Claim

Plaintiff alleges her letters to Ditech "regarding the nature and origination of the Loan error and a specific request for rectification" are QWRs within the meaning of 12 U.S.C. § 2605(e) and Ditech violated RESPA in failing to "appropriately respond." ECF No. 1 ¶¶ 20, 22, 27-30.

Under RESPA, a loan servicer "of a federally related mortgage loan" must respond to a "qualified written request from the borrower . . . for information relating to the servicing of such loan . . . ." 12 U.S.C. § 2605(e). A loan servicer's obligation to respond under RESPA is triggered by a QWR that "(1) reasonably identifies the borrower's name and account, (2) either states the borrower's 'reasons for the belief . . . that the account is in error' or 'provides sufficient detail to the servicer regarding other information sought by the borrower,' and (3) seeks 'information relating to the servicing of [the] loan.'" *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (quoting 12 U.S.C. § 2605(e)(1)(A)-(B)) (alterations in original).

"Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Under RESPA, "servicing" "does not include the transactions and circumstances surrounding a loan's origination—facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events *precede* the servicer's role in receiving the borrower's payments and

4

making payments to the borrower's creditors." *Medrano*, 704 F.3d at 666–67 (emphasis in original). Thus, "letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e)." *Id.* at 667.

Ditech argues plaintiff's communications concern an origination error, not a servicing issue, and thus are not QWRs that trigger Ditech's duty to respond under RESPA. ECF No. 8 at 10-14. Plaintiff argues *Medrano* "h[as] little precedential value" because it predates Dodd-Frank Act amendments to RESPA, Consumer Financial Protection Bureau ("CFPB") implementing regulations and Fannie Mae servicer guidelines. ECF No. 12 at 6-7. These authorities, plaintiff argues, expanded RESPA protections and require Ditech to take reasonable steps to remedy plaintiff's title defect. *Id.* Plaintiff further argues, though she does not plead in her complaint, that her loan payments were applied to the wrong parcel of land due to the title defect, and this is a "covered error" under RESPA. ECF No. 12 at 5; *see* 12 C.F.R. § 1024.35(a)-(b).

These arguments cannot save plaintiff's RESPA claim as currently pled. Plaintiff alleges she sent Ditech letters "regarding the nature and origination of the Loan error and a specific request for rectification." ECF No. 1 ¶¶ 20, 22. Thus, it is apparent from the face of plaintiff's complaint that she did not seek information related to the servicing of her loan and therefore did not trigger Ditech's duty to respond. *See Medrano*, 704 F.3d at 666. Moreover, plaintiff has not directed the court to any authority indicating the Dodd-Frank Act amendments and CFPB regulations call into question *Medrano*'s holding as it applies to plaintiff's claim. *See Watson v. Bank of Am., N.A.*, No. 16CV513-GPC(MDD), 2016 WL 6581846, at *7 (S.D. Cal. Nov. 7, 2016) ("While the 2014 amendment increased a loan servicer's duty to respond to QWRs, it did not amend the definition of what constitutes a qualified written request"); *see also Acunis-Graham v. Select Portfolio Servicing, Inc.*, No. 2:16-CV-08639-CBM-SS, 2017 WL 3049562, at *3 (C.D. Cal. Apr. 17, 2017) ("Plaintiffs' allegations demonstrate that the letters do not qualify as a 'Qualified Written Request' and 'Notice of Error,' because they do not assert any error in 'servicing' the loan."). Further, because plaintiff's complaint does not allege Ditech applied plaintiff's credits to the wrong account, the court does not consider whether such allegations

5

would constitute a "covered error" under 12 C.F.R. § 1024.35(b). *See* ECF No. 12 at 5. Finally, plaintiff cites no authority indicating Fannie Mae servicing guides may be enforced through RESPA.

Read fairly, plaintiff's letters to Ditech constitute "allegation[s] of fraud or mistake during the closing of the loan and the drafting of the relevant documentation. Thus, [the letters] concern[] only the loan's validity and terms, not its *servicing*." *See Medrano*, 704 F.3d at 667 (emphasis in original). The letters, as alleged, were not QWRs that triggered Ditech's duty to respond and plaintiff's RESPA claim must be dismissed.

Defendant's motion to dismiss plaintiff's RESPA claim is GRANTED with leave to amend in the event plaintiff can cure the defect.

B.  Negligence Claim

In her negligence claim, plaintiff alleges Ditech violated its duty of care to plaintiff when Ditech "failed to perform in accordance with its legal responsibilities under the RESPA, subjected her to unlawful, fraudulent and unfair business practices, and breached its contractual Covenant of Good Faith and Fair Dealing." ECF No. 1 ¶ 33.

"The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (1991) (citation omitted). As a general rule in California, a "financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014) (citing *Nymark*, 231 Cal. App. 3d at 1095–96). "This general rule also applies to loan servicers." *Willis v. JPMorgan Chase Bank, N.A.*, 250 F. Supp. 3d 628, 632 (E.D. Cal. 2017) (quoting *Argueta v. J.P. Morgan Chase*, Civ. No. 2:11-441 WBS GGH, 2011 WL 2619060, at *4 (E.D. Cal. June 30, 2011)). At the same time, courts have held that the general rule yields when the factors set forth in *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958), favor imposing a duty. *Cf. Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1180-82 (2016), *review denied* (July 27, 2016) (applying *Biakanja* factors and concluding financial instiution owed borrower a duty of care in loan modification

process). Moreover, "[w]hile there is no binding precedent, district courts have held that a loan servicer has a duty of care concerning its duty to respond to a borrower's QWR." *Watson v. Bank of Am., N.A.*, No. 16CV513-GPC(MDD), 2016 WL 3552061, at *13 (S.D. Cal. June 30, 2016) (citing, *inter alia*, *Boessenecker v. JP Morgan Chase Bank*, No. 13-0491 C MMC, 2014 WL 107063, at *1 (N.D. Cal. Jan. 10, 2014); *Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899-EMC, 2011 WL 6294472, at *16 (Dec. 15, 2011)). ).

Here, plaintiff argues the negligence per se doctrine imposes on Ditech a duty of care to plaintiff under "RESPA, its implementing regulations, and the pronouncements of Fannie Mae." ECF No. 12 at 7-8. Under negligence per se, the defendant's failure to exercise due care is rebuttably presumed if the defendant: (1) violated a statute, ordinance, or regulation; (2) the violation proximately caused injury to person or property; (3) the injury resulted from an occurrence of the nature the statute was designed to prevent; and (4) the party suffering the injury was one of the class of persons for whose protection the statute was adopted. Cal. Evid. Code § 669. As discussed above, plaintiff has not sufficiently alleged she submitted to Ditech a QWR that triggered Ditech's obligation to respond under RESPA, and thus has not shown Ditech violated RESPA or that she is among the class of individuals RESPA's QWR requirements were adopted to protect. . *See Coury v. Caliber Home Loans, Inc.*, No. 16-CV-05583-RS, 2017 WL 476411, at *3 (N.D. Cal. Feb. 6, 2017) (rejecting plaintiff's negligence per se argument because plaintiff was "not among the class of individuals RESPA intended to benefit"). In addition, plaintiff has not pled a basis from which the court may infer that Fannie Mae servicing guidelines govern plaintiff and Ditech's relationship. Accordingly, plaintiff's negligence per se argument cannot save her claim as currently pled.

Plaintiff's complaint has not alleged a basis for Ditech's purported duty of care owed to plaintiff. Thus, defendant's motion to dismiss plaintiff's negligence claim is GRANTED with leave to amend, if plaintiff can amend while complying with Federal Rule of Civil Procedure 11.

/////

/////

7

C. <u>Implied Covenant of Good Faith and Fair Dealing Claim</u>

Plaintiff's breach of implied covenant claim alleges Ditech willfully ignored plaintiff's complaints, failed to investigate the loan error, failed to communicate with plaintiff, failed to "perform in accordance with its legal responsibilities under the RESPA and subjected plaintiff to unlawful, fraudulent, and unfair business practices." ECF No. 1 at ¶ 37.

"The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract." *Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 711-12 (2010) (citation omitted); *see also* Judicial Council of Cal., Civil Jury Instructions No. 325 (2017) (requiring plaintiff to prove that plaintiff and defendant entered into a contract as an element of her breach of implied covenant claim). A covenant does not exist independently of an underlying contract. *Molecular Analytical Sys.*, 186 Cal. App. 4th at 712 (citation omitted).

Plaintiff's complaint alleges Ditech "is the successor in interest" to plaintiff's 2007 mortgage loan contract. ECF No. 1 ¶ 35. In her opposition, plaintiff alleges she and Ditech "were parties to a loan servicing agreement." ECF No. 12 at 9. Plaintiff does not sufficiently allege the existence of a contract between plaintiff and Ditech to support her breach of implied covenant claim. *See, e.g., Kaurloto v. U.S. Bank, N.A.*, No. 16-CV-06652-JFW-GJSX, 2016 WL 6808117, at *6 (C.D. Cal. Nov. 17, 2016), *appeal dismissed sub nom. Kathleen Kaurloto v. U.S. Bank, N.A., et al.* (Dec. 15, 2016); *Batuhan v. Assurity Fin. Servs., LLC*, No. 15-CV-04526-WHO, 2015 WL 7776470, at *3 (N.D. Cal. Dec. 3, 2015).

Defendant's motion to dismiss plaintiff's breach of the implied covenant claim is GRANTED with leave to amend, if plaintiff can amend while complying with Federal Rule of Civil Procedure 11.

D. <u>California UCL Claim</u>

California's unfair competition law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The statute's language has been construed as prohibiting three types

8

of practices: (1) unlawful acts or practices; (2) unfair acts or practices; and (3) fraudulent acts or practices. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Here, plaintiff's complaint alleges Ditech violated each UCL prong. ECF No. 1 ¶¶ 41-43.

### 1. Unlawful Acts or Practices

To allege a claim under the "unlawful" prong, a plaintiff must allege a violation of independent law. *See Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992). Because the UCL borrows violations of other laws, failure to state a claim under the underlying law constitutes failure to state a claim under the unlawful prong. *See Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838 (Cal. Ct. App. 1994); *see also Monet v. JPMorgan Chase Bank, N.A.*, No. 17-CV-00623-LHK, 2017 WL 3895790, at *7 (N.D. Cal. Sept. 5, 2017) ("Plaintiff's failure to adequately allege an underlying statutory violation is fatal to Plaintiff's UCL claim premised on those statutory violations.").

Plaintiff borrows her RESPA, negligence and breach of the implied covenant of good faith and fair dealing claims to allege unlawful acts. ECF No. 1 ¶ 41. Because the court determines plaintiff's underlying claims are insufficiently pled, her unlawful acts claim is likewise insufficient.

### 2. Unfair Acts

"California law is currently unsettled with regard to the standard applied to consumer claims under the unfair prong of the UCL." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017) (citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012); *see* William L. Stern, Business & Professions Code Section 17200 Practice § 3:118-3:121.1 (Cal. Rutter Guide, March 2017) (discussing unsettled standard).

In *Drum v. San Fernando Valley Bar Ass'n*, the court summarized the three tests used by California appellate courts. First, "one line of cases . . . requires 'that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions.'" 182 Cal. App. 4th 247, 257 (2010) (quoting *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260–61 (2006). Second, other courts consider "whether the alleged business practice 'is immoral,

9

unethical, oppressive, unscrupulous or substantially injurious to consumers[,] . . . requir[ing] the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Id.* (quoting *Bardin*, 136 Cal. App. 4th at 1260). Finally, some courts apply a test drawn from the definition of "unfair" in section 5 of the Federal Trade Commission Act, requiring "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.* (quoting *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 598 (2009)). The Ninth Circuit has rejected the FTC test in consumer cases. *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007) ("[W]e decline to apply the FTC standard in the absence of a clear holding from the California Supreme Court.").

Regardless of which test is applied, plaintiff's complaint does not state a valid "unfair" UCL claim. Plaintiff's claim of unfairness alleges only that Ditech ignored and failed to investigate her complaints, failed to communicate with her as required by law, and generally "failed to perform in accordance with its legal responsibilities under RESPA." ECF No. 1 ¶ 42. As discussed above, plaintiff has not established RESPA-imposed responsibilities on Ditech with respect to plaintiff's claim. Although "a practice may be deemed unfair even if not specifically proscribed by some other law[,]" plaintiff has not shown Ditech's alleged acts were "unfair" under any of the applicable tests. Because plaintiff has not demonstrated RESPA applies to her claim and has not otherwise alleged Ditech's acts or practices were unfair, she has not sufficiently pled an unfair act or practice claim.

### 3. Fraudulent Acts

The fraudulent prong of the UCL is "governed by the reasonable consumer test: a plaintiff may demonstrate a violation by show[ing] that [reasonable] members of the public are likely to be deceived." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (citation omitted). The "plaintiff need not show that he or she or others were actually deceived or confused by the conduct or business practice in question." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167 (2000). Whether a business practice is deceptive will usually be a question of fact

not appropriate for decision on a motion to dismiss. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Nonetheless, an unfair practice claim grounded in fraud must be pled with the particularity required by Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

Plaintiff alleges Ditech "fraudulently informed Plaintiff of an address for the redress of her Qualified Written Request and Notice of Error that was not, in fact, the correct address" for such inquiries. ECF No. 1 ¶ 43; *see* ECF No. 1 ¶ 19 (alleging "[p]laintiff asked for an address where she should send written correspondence specifically regarding the Loan error, and was given in response an address other than" Ditech's QWR address). Notably, plaintiff does not allege she requested Ditech's address for QWRs but then received a different address. *See* ECF No. 1 ¶ 19. Rather, she requested an address for "correspondence specifically regarding the Loan error." *Id.* As explained above, plaintiff has not established she sent defendant a QWR, as defined in RESPA. Accordingly, plaintiff has not alleged Ditech erroneously, much less fraudulently, provided her with an incorrect address for "correspondence regarding the Loan error" by not providing her with its address for QWRs. *See id.*

Accordingly, defendant's motion to dismiss plaintiff's UCL claim is GRANTED, with leave to amend.

IV. CONCLUSION

Defendant's motion to dismiss is GRANTED. Plaintiff shall file an amended complaint within 30 days of this order.

DATED: January 11, 2018.

_____
UNITED STATES DISTRICT JUDGE

11